UNITED STATES DISTRICT COURT　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
　　　　　　　　　　　　　　　　　　　　　　:
ESTATE OF DAVID S. GOTTESMAN,　　　:
　　and PAULA GOTTESMAN,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　MEMORANDUM
　　　　　　　　　　　　Plaintiffs,　　　　　:　　AND ORDER
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　- against -　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　09-CV-667 (JG) (RLM)
VERIZON NEW YORK, INC.,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendant.　　　　:
------------------------------------------------------- X

A P P E A R A N C E S:

　　　　HOWARD GOTTESMAN, ESQ.
　　　　　　4600 14th Avenue, #4F
　　　　　　Brooklyn, NY 11219
　　　　　　Attorney for Plaintiffs

　　　　DUANE MORRIS LLP
　　　　　　1540 Broadway
　　　　　　New York, NY 10036
　　　　By:　Eve I. Klein
　　　　　　Attorney for Defendant

　　　　DUANE MORRIS LLP
　　　　　　600 Grant Street, Suite 5010
　　　　　　Pittsburgh, PA 15219
　　　　By:　James P. Hollihan
　　　　　　Attorney for Defendant

JOHN GLEESON, United States District Judge:

　　　　This action arises out of the alleged breach of an agreement by Verizon New York, Inc. ("Verizon"), the former employer of David S. Gottesman, who died January 20, 2003. The plaintiffs, the Estate of David S. Gottesman and Paula Gottesman -- David's surviving spouse -- (collectively "Gottesman"), originally filed their complaint in New York Supreme Court, Kings County. The complaint set forth three causes of action: (1) breach of contract; (2)

negligent infliction of emotional distress; and (3) misrepresentation. Verizon removed the action to this court on the basis of federal question jurisdiction. 28 U.S.C. § 1441(b). Gottesman now moves to remand it back to state court on the ground that this court lacks subject matter jurisdiction. For the reasons set forth below, the motion is denied.

BACKGROUND

David Gottesman was an employee of Verizon for 33 years. As a Verizon employee, he was a participant in the Verizon Pension Plan for New York and New England Associates ("Verizon Pension Plan"). Decl. of David Fleming in Opp. to Pl.'s Mot. Remand ("Fleming Decl."), ¶¶ 3-4. As required by the Employee Retirement Income Security Act ("ERISA"), Verizon periodically distributes summary plan descriptions of its various pension plans to plan participants. *Id.* at ¶ 5. As of November 2002, the January 2001 Summary Plan Description was the most recent iteration of the Verizon Pension Plan. It was issued and mailed to all Verizon Pension Plan participants, including Mr. Gottesman, in September 2001. *Id*.

During the summer and fall of 2002, Verizon offered an early retirement incentive program to selected employees, including Mr. Gottesman. The early retirement incentive program consisted of two components: the Early Retirement Eligibility ("ERE") program and the Enhanced Income Protection Plan ("EIPP"). To inform eligible employees, such as Mr. Gottesman, about the program, Verizon mailed them information packets detailing the principal terms of the EIPP and ERE programs. *Id*. at ¶ 6. Under the EIPP, an employee was afforded the option of voluntarily terminating his or her employment with Verizon. In the event the employee's termination offer was accepted by Verizon, the employee would receive a lump sum payment, as well as 48 monthly EIPP payments. *Id*. at ¶ 7. Under the ERE program, an employee accepted as a participant became eligible for certain benefits, including: (1) the option

to continue to earn age and eligibility service under the Verizon Pension Plan for up to three years after the termination date; (2) immediate eligibility for retiree medical, dental and life insurance benefits; and (3) election of any form of pension distribution available under the Verizon Pension Plan (including the lump sum distribution) at any time using a pension commencement date either on the first day after termination or on the first of any month after electing ERE participation after termination.  *Id*. at ¶ 8.

On October 15, 2002, Mr. Gottesman phoned the Verizon Benefits Center to inquire about retirement, presumably in connection with his consideration of the offer to participate in the EIPP and ERE programs.  Mr. Gottesman called the Verizon Benefits Center again the following day to request an estimate of his pension benefits under the Verizon Pension Plan.  In response to his request, on October 19, 2002, the Verizon Benefits Center sent Mr. Gottesman an estimate of his pension benefits under the Verizon Pension Plan via overnight mail.  *Id*. at ¶ 10, Ex. B.

On October 21 and 23, 2002, Mr. Gottesman signed forms reflecting his acceptance of the offer to participate in EIPP indicating a termination date of November 2, 2002. *Id.* at ¶ 11, Ex. C & D.[1]  Also on October 21, 2002, Mr. Gottesman executed a form indicating that he accepted the provisions of the ERE program and understood that his termination date would be November 2, 2002.  *Id.* at ¶ 12, Ex. E.  The ERE form described the various enhancements to his rights and benefits under the Verizon Pension Plan.  It specifically noted that he could elect any form of pension distribution available under the Verizon Pension Plan,

---

[1] As a participant in the EIPP program, Mr. Gottesman was scheduled to receive EIPP payments totaling $56,938, with $17,770 of that amount being due in a lump sum payment, and the remainder payable in 48 monthly installments of $816.  *Id.* at ¶ 13, Ex. C.  After his termination date, Mr. Gottesman received the $17,770 lump sum EIPP payment via direct deposit as well as monthly payments during December 2002-March 2003.  Under the provision of the EIPP, in the event that an EIPP participant dies prior to his receipt of all the monthly payments, the balance was payable in a lump sum payment to his estate.  *Id*. at ¶ 14.

3

including a lump sum, with such benefits to begin on the first day of any month following his termination date. The form also stated that he needed to contact the Verizon Benefits Center 30 days prior to the date he wished his pension distribution to commence. *Id*.

Mr. Gottesman's employment with Verizon terminated on November 2, 2002. As an ERE participant, Mr. Gottesman had the right to begin his pension on the first day of any month following his termination date, provided he give 30 days notice to the Verizon Benefits Center. On January 2, 2003, Mr. Gottesman phoned the Verizon Benefits Center and elected to start the retirement process under the ERE program with a pension plan benefit commencement date of February 1, 2003. *Id*. at ¶ 15. Upon receipt of that request, the Verizon Benefits Center manually calculated Mr. Gottesman's retirement benefits and on January 3, 2003, sent him a retirement package via overnight mail. *Id.*, Ex. F. Pension election authorization and pension election confirmation forms were faxed to Mr. Gottesman on January 10, 2003. *Id*. On January 29, 2003, the Verizon Benefits Center received the January 10, 2003 pension election authorization forms, which had been signed by Mr. Gottesman and his wife on January 10, 2003. The forms indicated that Mr. Gottesman had elected to receive a lump sum distribution of his benefits under the Verizon Pension Plan in the amount of $232,708.48. *Id.* at ¶16, Ex. G. On January 20, 2003, Mr. Gottesman died, 11 days prior to the commencement date of his pension benefits. Mrs. Gottesman informed Verizon of her husband's passing on February 3, 2003. *Id*. at ¶ 17.

On April 1, 2003, Verizon mailed a check to "IRA of David S. Gottesman" for $232,708.48. Paula Gottesman Aff., ¶ 5 and Ex. 1. Verizon stopped payment on this check. *Id*. On April 15, 2003, Verizon sent a second check to the "Estate of David S. Gottesman." *Id*., Ex. 2. Verizon again stopped payment on the second check. *Id*. In July 2003, a Verizon

representative notified Mrs. Gottesman that she would be receiving a lump sum payment of only $151,883.41, explaining that as a beneficiary under the Verizon Pension Plan she was not eligible for the full amount that her husband was entitled to but instead was eligible to receive a distribution in accordance with the plan's service pensioner death benefit. Paula Gottesman Aff., ¶ 6, Fleming Decl. at ¶ 19.

Through counsel, Mrs. Gottesman submitted forms and correspondence to the administrators of the Verizon Pension Plan, asserting that she was entitled to the full amount that her husband would have received had he applied for and commenced receipt of retirement benefits prior to his death. Mrs. Gottesman's claim was denied in a letter dated May 27, 2004 by the Verizon Claims Review Unit ("VCRU"), the designated claims administrator for the plan. The letter specifically described the available appeal procedures for disputing the determination. No appeal or request for review of the VCRU's May 27, 2004 determination was ever submitted by or on behalf of Mrs. Gottesman. Def.'s Mem. 1-2.

On January 28, 2009, plaintiffs served Verizon with the instant action, which was filed in the New York Supreme Court, Kings County. On February 17, 2009, Verizon removed the action to this court on the basis of federal question jurisdiction. Plaintiffs now move to remand the action to state court.

DISCUSSION

A.  *Standard for Removal*

A defendant can remove an action filed in state court to a federal district court only if the federal court has original subject matter jurisdiction. *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed

by the defendant …, to the district court of the United States for the district … embracing the place where such action is pending."); *Lupo v. Human Affairs Int'l, Inc*., 28 F.3d 269, 271 (2d Cir. 1994). Thus, the primary consideration in evaluating whether removal was proper is whether the district court has original jurisdiction of the action, *i.e.* whether the case could have been filed originally in federal court based on a federal question, diversity of citizenship, or another statutory grant of jurisdiction. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).

B.  *Burden of Proof*

In its notice of removal, Verizon asserts one basis for jurisdiction -- federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the ERISA. 29 U.S.C. §§ 1001 *et seq*. Upon Gottesman's motion to remand, the burden falls upon Verizon to prove that jurisdiction exists and that the case is properly in federal court. *See Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994) (where assertion of ERISA preemption permits removal of a beneficiary's case from state court, "the defendant bears the burden of demonstrating the propriety of removal"); *Crazy Eddie, Inc. v. Cotter*, 666 F. Supp. 503, 508 (S.D.N.Y. 1987) (a removing party bears the burden of establishing that the case falls within the court's removal jurisdiction). "When the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *Ehrenspeck v. Spear, Leeds & Kellogg*, 389 F. Supp. 2d 485, 488 (S.D.N.Y. 2005) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc*., 612 F.2d 651, 655 (2d Cir. 1979)).

C.  *Federal Question Jurisdiction And The Well-Pleaded Complaint Rule*

The federal question statute, 28 U.S.C. § 1331, states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In order to state a federal claim, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). The plaintiff is generally the master of its own complaint and thus is entitled to decide what law to rely on. *See Korsinsky v. Salomon Smith Barney, Inc.*, No. 01 Civ. 6085, 2002 WL 27775, at *2 (S.D.N.Y. Jan. 10, 2002) (citing *N. Am. Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229 (2d Cir. 1978)).

To determine whether a plaintiff's complaint presents a federal question, a court is generally guided by the "well-pleaded complaint" rule. *See Caterpillar*, 482 U.S. at 392; *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The well-pleaded complaint rule states as follows:

> '[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, … must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)); *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts."). Under this rule, federal question jurisdiction exists only if a federal question is present on the face of a plaintiff's properly pleaded complaint. *Caterpillar*, 482 U.S. at 392. A defendant may not remove a case to federal court unless plaintiff's complaint has established that the claim arises under federal

7

law. *Franchise Tax*, 463 U.S. at 10. Furthermore, a defendant may not remove a case on the basis of a federal defense, even if the federal defense is the only question at issue in the case. *Caterpillar*, 482 U.S. at 393. If a case was not properly removed because the district court does not have original jurisdiction, the court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c); *Franchise Tax*, 463 U.S. at 8.

A plaintiff's choice in pleading his complaint, however, is not absolute. Under the "artful pleading" doctrine, "a federal claim may not be brought in state court, disguised in the clothing of a state claim, merely for purposes of bringing it in that forum." *Bellido-Sullivan v. American Int'l Group, Inc.*, 123 F. Supp. 2d 161, 164 (S.D.N.Y. 2000) (citing *Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists*, 390 U.S. 557 (1968)). If a claim is artfully pleaded in this way, the defendant may remove the lawsuit to federal court pursuant to 28 U.S.C. § 1447. *Id*.

Nevertheless, there are generally only two circumstances in which artful pleading will justify removal: (1) where the federal law completely preempts state law in the field; and (2) where an issue of federal law is a necessary element of the plaintiff's state law claim and is so central to that claim that it justifies removal. *Id*. With respect to the first circumstance, the Second Circuit has noted that the number of statutes completely preempting their respective fields is limited to three areas: ERISA, the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and certain Indian land grant rights. *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998).

D.   ERISA Preemption

In *Metropolitan Life Insurance Co. v. Taylor*, the Supreme Court found that ERISA had the "extraordinary pre-emptive power ... [to convert] an ordinary state common law

complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." 481 U.S. at 63-67 (assertion of ERISA preemption permits removal of a beneficiary's case from state court, even if the complaint has pleaded only state law claims); *see also Ross v. Liberty Mut. Ins. Co.*, 172 Fed. App'x 346, 346 (2d Cir. 2006) (summary order) ("Any state cause of action that 'duplicates, supplements, or supplants' the civil enforcement remedies of [ERISA], is completely preempted by Congress and, therefore, removable without regard to the wording of the complaint." (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004))); *Smith v. Dunham-Bush, Inc.,* 959 F.2d 6, 10 (2d Cir. 1992); *Macro v. Independent Health Ass'n*, *Inc*., 180 F. Supp. 2d 427, 432 (W.D.N.Y. 2001) ("Claims falling within ERISA's civil enforcement provisions seeking to recover benefits, to enforce rights, or to clarify rights to future benefits under a plan covered by ERISA are said to be completely pre-empted." (internal quotation marks and footnote omitted)).

The Second Circuit has explained that "[a]s to state statutory claims, ERISA preempts those that 'provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee.'" *Paneccasio v. Unisource Worldwide, Inc*., 532 F.3d 101, 114 (2d Cir. 2008) (quoting *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989)). With respect to state common law claims, "ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Paneccasio*, 532 F.3d at 114 (2d Cir. 2008) (quoting *Davila*, 542 U.S. at 214). *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 145 (1990) (ERISA preempts claims that "purport[] to provide a remedy for the violation of a right expressly guaranteed by [ERISA]"). "'[C]auses of action within the scope of

the civil enforcement provisions of § 502(a) [are] removable to federal court.'" *Davila*, 542 U.S. at 209 (quoting *Metropolitan Life Ins.*, 481 U.S. at 66). A cause of action falls within the civil enforcement provisions of § 502(a)(1)(B), and a person's cause of action is completely preempted, "if an individual at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions." *Id*. at 210. Thus, a cause of action within the scope of the civil enforcement provisions of ERISA § 502(a) is "necessarily federal in character by virtue of the clearly manifested intent of Congress" and is removable to federal court. *Metropolitan Life Ins.*, 481 U.S. at 66-67.

E.  *Gottesman's State Law Claims Are Preempted By ERISA*

Preemption in this case depends on whether Gottesman's state law claims "relate to" the Verizon Pension Plan, an ERISA-covered pension plan.[2] "A claim styled as a state common law cause of action is removable under ERISA if it 'relates to' an employee benefit plan within the meaning of section [29 U.S.C. § 1003(a)], and falls within the scope of the statute's civil enforcement provisions, found in section 502(a)." *Smith*, 959 F.2d at 8, 10 (applying preemption to breach of contract and negligent misrepresentation claims because "the oral representation underlying [the] suit deals expressly and exclusively with the appellant's [pension] benefits"). Although Gottesman did not formally assert an ERISA claim under §

---

[2]  Under the ERISA statute, the terms "employee pension benefit plan" and "pension plan" mean:

[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).

10

502(a)(1)(B), based on a review of the allegations in the complaint as well as the record before me, it is clear that, in essence, Gottesman is seeking to recover pension benefits that relate to Mr. Gottesman's participation in the Verizon Pension Plan. Because these claims necessarily fall within the scope of ERISA's enforcement sections, Gottesman's state law claims are preempted by ERISA, making them subject to removal to this court.

Based on the documentation provided by Verizon, I conclude that it has met its burden of showing that Gottesman's claims relate to an ERISA regulated employment plan. It is undisputed that Mr. Gottesman was a participant in the Verizon Pension Plan -- an ERISA-covered plan. As such, he was periodically mailed summary descriptions of the plan. As a plan participant, Mr. Gottesman was offered to participate in the early retirement incentive program. Mr. Gottesman accepted the offer in October 2002 by signing forms electing to participate in the EIPP and ERE programs. Mr. Gottesman placed numerous calls to the Verizon Benefit Center regarding his pension benefits and received EIPP payments as a result of his participation in the program. The record is clear that the "lump sum" payment of $232,708.48 that Mr. Gottesman expected to receive under the ERE program was not a severance payment or amount promised for retiring early, but rather was the value of his pension. *See* Fleming Decl., Ex. B. These facts refute plaintiffs' argument that the claims in this case pertain solely to "a buy-out offer" or "simple agreement" not governed by ERISA.[3] Pl. Br. at 8. Rather the claims clearly pertain to benefits related to Mr. Gottesman's pension plan.

---

[3] Plaintiff's argument that ERISA does not apply to this action because Mr. and Mrs. Gottesman did not understand the early retirement program to be related to an ERISA-covered plan is misplaced. An agreement may be subject to ERISA even when the parties did not intend it to be subject to ERISA. *See Randol v. Mid-West Nat. Life Ins. Co. of Tenn.*, 987 F.2d 1547 (11th Cir.), *cert. denied*, 510 U.S. 863 (1993).

As Mr. Gottesman's surviving spouse, Mrs. Gottesman is beneficiary under the Verizon Pension Plan. Thus she has standing to assert a claim for benefits under § 502(a)(1)(B).[4] Accordingly, plaintiff's suit relates to the Verizon Pension Plan and thus is preempted by ERISA.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to remand is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated:    April 6, 2009
           Brooklyn, New York

---

[4] The Civil Enforcement provision of ERISA states that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).